Jenna Dakroub, CA #350170
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff*
*Clarencia D. Jones*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CLARENCIA D. JONES,<br><br>Plaintiff,<br><br>v.<br><br>ONE SOURCE TECHNOLOGY, LLC d/b/a ASURINT<br><br>Defendant. | Case No. 5:23-cv-1652<br><br>**JURY TRIAL DEMANDED**<br><br>1. FCRA, 15 U.S.C. §§ 1681, *et seq.*<br>2. Cal. Civ. Code § 1785 *et seq.*<br>3. Cal. Civ. Code § 1786 *et seq.* |

# **COMPLAINT**

Clarencia D. Jones ("Plaintiff" or "Ms. Jones") by and through her counsel brings the following Complaint against One Source Technology, LLC d/b/a Asurint ("Defendant" or "Asurint") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code. § 1785 *et seq.*, and violations of the Investigative Consumer Reporting Agency Act ("ICRAA"), Cal. Civ. Code. § 1786 *et seq.* arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely reported that Plaintiff had

- 1 -

a pending charge for ***murder***, ***felony convictions,*** and several other crimes that belong to another.

## **INTRODUCTION**

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code. § 1785 *et seq.*, and the Investigative Consumer Reporting Agency Act ("ICRAA"), Cal. Civ. Code. § 1786 *et seq.*

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of misdemeanor inhuman corporal punishment-inflicted upon a child and felony manufacture of a controlled substance.

4. Defendant also falsely reported to Plaintiff's prospective employer that Plaintiff was charged with felony murder.

5. Defendant's reporting is grossly inaccurate and untrue.

6. Plaintiff has never been charged with the above-mentioned criminal records.

7. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor and felony criminal records, which do not belong to Plaintiff.

8. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from San

Bernardino County, California regarding the felony and misdemeanor criminal records prior to publishing Plaintiff's report to her prospective employer.

9. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their first and middle name and social security number.

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

13. As a result of Defendant's violations of the FCRA, CCRAA, and ICRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure

maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, the CCRAA, and the ICRAA.

## PARTIES

15. Clarencia D. Jones ("Plaintiff" or "Ms. Jones") is a natural person residing in Victorville, California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant One Source Technology, LLC d/b/a Asurint ("Defendant" or "Asurint") is a California corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 1501 Euclid Avenue, Suite 900, Cleveland, Ohio 44115. Asurint can be served through its Registered Agent, c/o Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

17. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

33. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

35. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that

belong to an unrelated consumer who has a different first and middle name, and social security number than Plaintiff.

41. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job through Staffmark Group

42. At the end of May 2023, Plaintiff began exploring employment opportunities with Staffmark Group ("Staffmark").

43. Staffmark is a staffing agency providing temporary, temp-to-hire and direct hire placements.

44. After contacting Staffmark, Plaintiff learned that there was a position suitable for her as a Material Handler with Pitney Bowes that was opening soon.

45. Accordingly, Plaintiff completed and submitted an application to Staffmark for employment.

46. As part of the application process, Staffmark required, and Plaintiff authorized a background check. The position with Staffmark was conditioned on Plaintiff passing a background check ("employment report").

### Defendant Published an Inaccurate Background Check Report to Staffmark

47. Staffmark contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

48. On or about May 30, 2023, Staffmark ordered a criminal background check on Plaintiff from Defendant.

49. Thereafter, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Staffmark.

- 8 -

50. Within that employment report, Defendant published inaccurate information about Plaintiff.

51. Specifically, Defendant's employment report about Plaintiff included numerous inaccurate and stigmatizing misdemeanor and felony criminal records from San Bernardino County, California.

52. Defendant reported Plaintiff was convicted of misdemeanor inhuman corporal punishment-inflicted upon a child and felony manufacture of a controlled substance and that Plaintiff was charged with felony murder (collectively known as, the "Inaccurate Criminal Records").

53. The Inaccurate Criminal Records reported by Defendant about Plaintiff to Staffmark *do not* belong to Plaintiff.

54. Plaintiff has never been charged with or convicted of the above-mentioned Inaccurate Criminal Records.

55. A cursory review of the widely available underlying public court records confirms that the records belong to Plaintiff's twin brother, Clarence Dock Jones ("Convicted Felon Jones").

56. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the Inaccurate Criminal Records, it would have seen obvious discrepancies between Convicted Felon Jones and Plaintiff.

57. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Jones include the following:

   (a)  Plaintiff's legal name is "*Clarencia Doll* Jones" and the criminal records belong to a "*Clarence Dock* Jones," which is both clearly indicated on the face of the employment report and in the widely available public records from San Bernardino County, California; and,

(b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Felon Jones.

58. Furthermore, widely available public records indicate that Convicted Felon Jones was incarcerated at the time of the *employment* application.

59. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

60. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to Plaintiff's twin brother with a different first and middle name than Plaintiff, and a different Social Security Number than Plaintiff.

61. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Staffmark Did Not Place Plaintiff in the Pitney Bowes Position**

62. On or about June 13, 2023, Plaintiff was notified by Staffmark that her employment application was denied as a direct result of the misdemeanor and felony criminal records reported by Defendant.

63. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Jones, were published in the employment report Defendant sold about Plaintiff to Staffmark.

64. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Jones's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on her future.

65. Specifically, Defendant matched Plaintiff and Convicted Felon Jones and published the criminal records of Convicted Felon Jones onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Staffmark, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputes the Inaccurate Information with Defendant**

66. On June 13, 2023, desperate to secure employment with Staffmark and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant.

67. Plaintiff identified herself and provided information to Defendant to support her dispute.

68. Plaintiff specifically disputed the criminal records of Convicted Felon Jones.

69. Plaintiff specifically stated that the criminal records of Convicted Felon Jones do not belong to Plaintiff.

70. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Jones's criminal records from any employment report about Plaintiff.

71. On June 30, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed the criminal records from the subject employment report.

72. Defendant also communicated to Plaintiff that it had issued a corrected employment report to Staffmark.

73. Plaintiff continued to follow up with Staffmark and hopes that the job offer would be reinstated, however, Staffmark did not renew its job offer to Plaintiff.

74. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Staffmark formed a negative opinion about Plaintiff and/or moved on to other candidates.

75. Defendant's false report cost Plaintiff a promising, well-paying job with Staffmark.

76. Plaintiff was excited to work as a Material Handler because she was qualified to successfully perform the work and was passionate about the field.

77. Due to Defendant's unreasonable procedures in the first place, Plaintiff was unable to work for Staffmark. This was a particularly difficult hardship for Plaintiff considering she was the sole provider for her disabled wife and her five stepchildren.

78. Instead of a stable, well-paying job with Staffmark, Plaintiff is forced to perform lower-paying temporary jobs to get by and feed her family.

79. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA, CCRAA, and ICRAA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

80. As a result of Defendant's violations of the FCRA, CCRAA, and ICRAA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

# CLAIMS FOR RELIEF
## COUNT I
## 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

82. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

83. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

84. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

85. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

86. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

87. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Cal. Civ. Code § 1785.14**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**

89. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

90. The CCRAA provides additional regulatory requirements concerning consumer reporting agencies, like Asurint, who operate within the state of California or prepare consumer reports on consumers located within the state of California.

91. The CCRAA requires consumer reporting agencies, like Asurint, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. Cal. Civ. Code § 1785.14(b).

92. It is wholly unreasonable to maintain procedures that allow records to be reported about consumers based on lax, imprecise, and faulty algorithms.

93. Specifically, it was wholly unreasonable for Asurint to report that Plaintiff was convicted of crimes that did not belong to her.

94. Asurint violated § 1785.14(b) of the CCRAA by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report.

95. As a result of Asurint's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

96. Asurint's violations of the CCRAA were willful. Therefore, Asurint is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(2).

97. Alternatively, Asurint's violations of the CCRAA were negligent. Therefore, Asurint is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. Cal. Civ. Code § 1785.31(a)(1).

98. In any event, Asurint is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1785.31(d).

## COUNT III
**Asurint's Violations of the Cal. Civ. Code § 1786.20**

99. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

100. The ICRAA provides additional regulatory requirements concerning consumer reporting agencies, like Asurint, who operate within the state of California or prepare consumer reports on consumers located within the state of California.

101. The ICRAA requires consumer reporting agencies, like Asurint, to maintain reasonable procedures to assure they compile and disburse consumer information with maximum possible accuracy. Cal. Civ. Code § 1786.20(b).

102. It is wholly unreasonable to maintain procedures that allow records to be reported about consumers based on loose matching algorithms.

103. Specifically, it was wholly unreasonable for Asurint to report that Plaintiff was convicted of crimes that did not belong to her.

104. Asurint violated § 1786.20(b) of the ICRAA by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report.

105. As a result of Asurint's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

106. Asurint's violations of the ICRAA were willful. Therefore, Asurint is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. Cal. Civ. Code §§ 1786.50(a), (b).

107. Alternatively, Asurint's violations of the ICRAA were negligent. Therefore, Asurint is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. Cal. Civ. Code § 1786.50(a)(1).

108. In any event, Asurint is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1786.50(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

ii. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

iii. Punitive damages pursuant to 15 U.S.C. § 1681n;

iv. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

v. Actual damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vi. Statutory damages pursuant to Cal. Civ. Code §§ 1785.31(a)(1) and/or 1785.31(a)(2);

vii. Punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2);

viii. Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(d);

ix. Actual damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

x. Statutory damages pursuant to Cal. Civ. Code §§ 1786.50(a)(1) and/or 1785.31(a)(2);

xi. Punitive damages pursuant to Cal. Civ. Code § 1786.50(b);

xii. Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1786.50(a)(2);

xiii. Punitive damages to be determined at trial, for the sake of example and punishing defendant for its malicious conduct, pursuant to Cal. Civ. Code § 3294;

xiv. All pre-judgment and post-judgment interest as may be allowed under the law; and

xv. Any other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

DATED: August 15, 2023

/s/ *Jenna Dakroub*
Jenna Dakroub, CA #350170
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff*
*Clarencia D. Jones*